DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MOLLY K. PRIEDEMAN (CABN 302096)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7332
    Fax: (415) 436-7234
    Molly.Priedeman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:20-mj-71121 MAG |
| Plaintiff, | MEMORANDUM IN SUPPORT OF THE UNITED STATES'S MOTION FOR DETENTION |
| v. | Date:    September 14, 2020 |
| MILLER STEVE JERNIGAN, | Time:    10:30 a.m. |
| Defendant. | Court:  Honorable Alex Tse |

    Miller Steve Jernigan is a convicted felon with an extensive criminal record and a history of committing new offenses while on state parole and probation. Jernigan's poor performance on state parole demonstrates by a preponderance of the evidence that he is a serious risk of non-appearance and no condition or combination of conditions can reasonably assure his future appearance in court. Moreover, Jernigan's conduct in this case, and his lengthy criminal history are clear and convincing evidence that he is a danger to the community and no condition or combination of conditions can reasonably assure the safety of the community. Accordingly, the Court should order Jernigan detained pending trial.

1

2                                                      **BACKGROUND**

3   **I.**   **OFFENSE CONDUCT**

4         On January 14, 2020, Jernigan was a passenger in a car pulled over by San Francisco Police

5   Department ("SFPD") in the Mission District of San Francisco.  While officers were speaking to the

6   driver and Jernigan, Jernigan abruptly and erratically reached across the front seat.  Jernigan and the

7   passenger were ordered out of the vehicle, and officers discovered a loaded Glock style "ghost gun"

8   between the passenger seat and the center console, near where Jernigan was reaching.  Jernigan's DNA

9   was later found on the firearm.

10        On August 12, 2020, Jernigan was charged, via complaint, with being a felon in possession of

11  ammunition in violation of 18 U.S.C. 922(g)(1).

12  **II.**   **CRIMINAL HISTORY AND CONDUCT WHILE ON STATE PAROLE**

13        Jernigan is a convicted felon with a lengthy criminal history.  In the last four years alone, he has

14  sustained three robbery convictions pursuant to California Penal Code Section 211.  Jernigan has been

15  arrested multiple times while on state parole, and his parole has been revoked three times in the last two

16  years.  Not surprisingly, he was on parole at the time of the current offense.  In 2018, he was arrested

17  after he threated to shoot up a gas station while on state parole, and his parole was revoked as a result.

18  Jernigan has suspected gang ties based on gang indicia found on his person during an arrest in

19  November 2017.

20                                                      **ARGUMENT**

21  **I.**   **LEGAL STANDARDS**

22        The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no

23  condition or combination of conditions will reasonably assure the appearance of the person as required

24  and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is

25  appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to

26  prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant

27  is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C.

28  § 3142(f)(2)(B).  A finding that a defendant is a flight risk need only be supported by a preponderance of

1   the evidence.  *Motamedi*, 767 F.2d at 1406.  "[T]he Bail Reform Act mandates an [1] individualized

2   evaluation [2] guided by the factors articulated in § 3142(g)."  *See United States v. Diaz-Hernandez*, 943

3   F.3d 1196, 1199 (9th Cir. 2019).  Categorical grants or denials of bail, not tethered to an individualized

4   determination, are impermissible.  *Id*.  Consideration of factors outside the articulated factors set forth in

5   Section 3142 is also disfavored.  *Id*.

6       The Court must consider four factors in determining whether the pretrial detention standard is

7   met:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the

8   defendant; (3) the history and characteristics of the defendant, including the defendant's character,

9   physical and mental condition, family and community ties, past conduct, history relating to drug or

10  alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as

11  whether the crime was committed while the defendant was on probation or parole; and (4) the nature and

12  seriousness of the danger to any person or to the community that would be posed by the defendant's

13  release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

14  **II.    SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION**

15      As for the nature and circumstances of the charged offense, under § 3142(g)(1), this factor

16  weighs in favor of detention.  Jernigan's offense conduct here is very serious.  Jernigan's possession of a

17  firearm in this instance was not merely passive.  Rather, during a traffic stop, Jernigan made sudden,

18  erratic movements, consistent with reaching for the firearm, and a firearm was ultimately recovered.

19  Jernigan's evasive movements in close proximity to a loaded firearm while speaking with officers

20  during a traffic stop were incredibly dangerous.  The seriousness of the charged offense is reinforced by

21  statutory mandate.  Congress passed Section 922(g) to "disarm groups whose members Congress

22  believes are unable or unwilling to conduct themselves in conformity with the responsibilities of

23  citizenship."  *United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (internal quotation marks

24  omitted).  That statutory goal bears directly on the question of detention here because (as demonstrated

25  by his violent criminal history, which includes multiple instances of unlawful weapon possession)

26  Jernigan chooses to live by his own rules, not in "conformity with the responsibilities of citizenship."

27      As for the weight of the evidence, under § 3142(g)(2), this factor also favors detention because

28  the evidence of Jernigan's guilt is overwhelming.  The firearm was found next to Jernigan, and Jernigan

was reaching in an area consistent with where the firearm was found.  Moreover, Jernigan's DNA was found on the firearm.  While this factor is deemed the least important by case law, courts are still "require[d]" to consider it, and it can help establish dangerousness.  *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released).  Likewise, overwhelming evidence of Jernigan's guilt "makes it more likely that he will flee," particularly in light of the term of imprisonment that Jernigan potentially faces here.  *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991).

Jernigan's history and characteristics, including his criminal history and his performance under court supervision considered under §§ 3142(g)(3) and (g)(4), strongly favor detention.  Jernigan has been convicted of several felonies as an adult prior to his commission of the instant offense.  And, Jernigan has violated his parole numerous times.  This shows that he is not amenable to pretrial supervision, is a serious risk of nonappearance, and is a danger to the community.  Despite Jernigan's lengthy criminal history, he has refused to stop his criminal behavior, and has apparently made no attempts to change his violent ways.

## III.   <u>JERNIGAN IS BOTH A FLIGHT RISK AND DANGER TO THE COMMUNITY</u>

As described above, Jernigan's history and characteristics, and his conduct in the instant case, demonstrate the significant danger he poses to the community, and the risk of flight he poses if he were to be released.  To the extent Jernigan argues that the COVID-19 pandemic minimizes the risk he poses, the COVID-19 pandemic does not meaningfully shift the balance of the Section 3142(g) factors in Jernigan's favor. [1]

---

[1]  In a written order, United States Magistrate Judge Susan van Keulen rejected a motion for release premised on the emergence of COVID-19, concluding that the existence and spread of COVID-19 did nothing to undermine the Court's previous findings regarding risk of flight and danger to the community.  *United States v. Trujillo*, No. 20-cr-00028-EJD-1 (SVK), Dkt. 15 (N.D. Cal.); *see also*, *e.g.*, *United States v. Sanchez*, No. 19-CR-00576-VC (JSC), Dkt. 23 (N.D. Cal.) (oral order denying bail motion premised on COVID-19 concerns); *United States v. Traore*, No. 20-CR-029-VC (JSC), Dkt. 28 (N.D. Cal.) (same); *United States v. Campos*, No. 19-CR-0280-RS (JSC), Dkt. 95 (N.D. Cal.) (same); *but see In the Matter of the Extradition of Alejandro Toledo Manrique*, No. 19-mj-71055-MAG-1 (TSH), Dkt. 115 (granting motion for release premised on COVID-19 concern in extradition proceeding, with different standards for release than under the Bail Reform Act, where defendant was more than 70 years old).

A.    **Jernigan is a flight risk.**

Section 3142(e) is primarily concerned with reasonably assuring the appearance of the defendant so that the judicial proceedings may proceed.  Nothing about the COVID-19 pandemic changes Jernigan's incentives to flee.  If presented with the opportunity to flee, Jernigan's history, particularly the fact that he has repeatedly violated his parole, strongly indicates that he will do so.  Jernigan's record of conduct demonstrates that he will neither heed this Court's orders nor abide by any conditions of release.

B.    **Jernigan is a danger to the community.**

Nothing about the COVID-19 pandemic reduces Jernigan's danger to others.  The danger posed to the community by firearms has been well-established.  *See, e.g.*, *United States v. Daychild*, 357 F.3d 1081, 1100 (9th Cir. 2004) (approving detention on danger prong due to defendant's possession of firearms); *Torres*, 911 F.3d at 1264.

The conduct Jernigan has exhibited in the past, including multiple robbery convictions, would be a significant danger to the community and given that California parole has not found a way to mitigate that danger, there is no reason to believe that this Court could fashion conditions that would adequately mitigate it.

The community itself is more vulnerable to the danger posed by Jernigan given the COVID-19 pandemic.  This is because first responders are focused on mitigating the effects of the COVID-19 outbreak, reducing the ability to prevent and respond to wrongdoing.  Indeed, as a district court in Maryland observed, installation of location monitoring tools poses a risk to United States Pretrial Services officers "given the current recommendations regarding implementation of social distancing." *United States v. Martin*, 2020 WL 1274857, Case No. PWG-19-140-13 (D. Md. Mar. 17, 2020).

In the current climate, irresponsible social habits can also endanger the health of the community. Jernigan has shown an unwillingness or inability to follow rules, and a disregard for the welfare of others.  His failure to follow rules poses particular dangers to the community.

Jernigan poses a significant danger to the community, and he cannot show that the risk of contracting COVID-19 (a risk that applies in the community as well) makes him any less of a danger.

1    There are no conditions or combination of conditions that reasonably mitigate Jernigan's risk of flight or

2    dangerousness to the community and he should be detained pending trial.

3                                              **CONCLUSION**

4            For the foregoing reasons, the Court should grant the government's motion to detain Jernigan

5    pending trial.

6

7    DATED: September 13, 2020                          Respectfully submitted,

8                                                       DAVID L. ANDERSON
                                                        United States Attorney
9

10                                                      _____/s/_____

11                                                      MOLLY K. PRIEDEMAN
                                                        Assistant United States Attorney
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28